Dena C. Sharp (SBN 245869)
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

Jeffrey A. Neiman (*pro hac vice* forthcoming)
jneiman@mnrlawfirm.com
Michael A. Pineiro  (*pro hac vice* forthcoming)
mpineiro@mnrlawfirm.com
Brandon S. Floch (*pro hac vice* forthcoming)
bfloch@mnrlawfirm.com
**MARCUS NEIMAN RASHBAUM &**
**PINEIRO LLP**
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: 305.400.4260
Fax: 757.260.9857

Benjamin J. Widlanski (*pro hac vice* forthcoming)
bwidlanski@kttlaw.com
Tal J. Lifshitz (*pro hac vice* forthcoming)
tjl@kttlaw.com
Rachel Sullivan (*pro hac vice* forthcoming)
rs@kttlaw.com
Michael Lorigas (*pro hac vice* forthcoming)
mlorigas@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON**
**LLP**
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Telephone: 305.372.1800
Fax: 305.372.1800

*Attorneys for Plaintiff Brodie That Dood, Inc.*
*and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BRODIE THAT DOOD, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>PAYPAL, INC. and PAYPAL HOLDINGS, INC.,<br><br>    Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brodie That Dood, Inc., on behalf of itself and all others similarly situated, brings this Class Action Complaint against Defendants PayPal, Inc. and PayPal Holdings, Inc. (together, "PayPal") and states as set forth below.

## INTRODUCTION

1.      Honey is a free extension that consumers install on their web browsers to access discount codes, coupons, and other savings on their internet purchases. When a consumer uses the Honey extension, Honey finds the best available discount codes to apply to the consumer's purchase. PayPal also runs a rewards program through the Honey browser extension, which allows consumers to accrue points to apply to future purchases. Purchased by PayPal in 2020, Honey currently has more than 17 million users and claims to save each of them $126 a year on average. PayPal does not disclose, however, that Honey turns a profit by stealing lucrative commissions from influencers, podcasters, bloggers, and other content creators who drive online sales.

2.       The Honey scheme works as follows. Content creators with as many as millions of online followers enter into contracts with online merchants to promote the merchants' products on their platforms in exchange for a commission on all resulting sales. The content creators promote the products on their chosen platforms and provide their followers with an affiliate link, which connects the consumer to the merchant's website. When the consumer is connected to the website, the content creator's unique code is stored in a "tracking cookie" on the consumer's browser, identifying the content creator as the source of the referral. When the consumer makes a purchase, the merchant uses the cookie to link the sale to the content creator and credit the creator for the sale. Ultimately, the merchant pays the content creator a commission on the sale, which usually amounts to 1-20% of the sale price.

3.      PayPal disrupts this process and poaches affiliate commissions from all sales to consumers who use the Honey browser extension. PayPal does this by replacing the tracking cookies of content creators like Plaintiff with a PayPal cookie, which takes credit for the sale. Content creators are not notified that their tracking cookie has been replaced or that credit for their sale has been transferred to PayPal, and the followers who use the affiliate links have no way of knowing that the creator has not been credited with the sale. Online retailers are similarly in the dark and have no way to discern that a substitution has occurred. Accordingly, they pay PayPal, the owner of the cookie found on the follower's browser. This

1  scheme has allowed PayPal to steal millions of dollars in commission from affiliate marketers like Plaintiff

2  and the class members it seeks to represent.

3      4.     Based on PayPal's illegal acts and practices, Plaintiff seeks damages and equitable relief,

4  including disgorgement of PayPal's ill-gotten gains, and asserts claims for conversion, tortious interference

5  with contractual relations, unjust enrichment, and violations of statutory prohibitions on unfair and

6  deceptive business practices on behalf of herself and all others similarly situated.

7  **PARTIES**

8      5.     Plaintiff Brodie That Dood, Inc. ("Brodie That Dood") is a Florida corporation with its

9  principal place of business in Fort Lauderdale, Florida. Brodie That Dood was established by content

10  creator Cliff Brush Jr. as a platform for content about his service dog, an 80-pound goldendoodle named

11  Brodie. Brodie that Dood has more than 16 million followers across YouTube, Instagram, TikTok, and

12  Facebook, and has affiliate marketing relationships with numerous brands, including Sundays Dog Food,

13  Spot & Tango, and K9 Sport Sack.

14      6.     Defendant PayPal Holdings, Inc. is a Delaware corporation that is licensed to do business

15  in California and maintains its principal place of business and corporate headquarters at 2211 North First

16  Street, San Jose, California 95131. PayPal Holdings is the parent company to PayPal, Inc.

17      7.     Defendant PayPal, Inc. is a Delaware corporation licensed to do business in California which

18  maintains its principal place of business and corporate headquarters at 2211 North First Street, San Jose,

19  California 95131.

20      8.     At all relevant times, each defendant was the agent of the other and, in performing the acts

21  alleged in this complaint, acted within the course and scope of that agency. Each defendant had actual or

22  apparent authority to act on behalf of the other and ratified, authorized, or accepted the benefits of the acts

23  performed by the other.

24  **JURISDICTION AND VENUE**

25      9.     This Court has subject-matter jurisdiction over this action pursuant to the Class Action

26  Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than one hundred class

27  members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at

28  least one member of the class is a citizen of a state different from Defendants.

10.     This Court has personal jurisdiction over Defendants because they maintain their principal place of business in this District, conduct substantial business in this District, and have purposefully availed themselves of the benefits and privileges of conducting business in this District, and have caused substantial injury to Plaintiff and all members of the class by virtue of their conduct in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

12.     Online content creators do not work for free. They create original content to post on internet platforms like YouTube, Instagram, Facebook, Apple Podcasts, and Spotify, and cultivate followers who view that content on their chosen platforms. Content creators generate income from the content they post through subscriptions, advertising, brand sponsorships, the sale of merchandise, licensing agreements, and affiliate marketing arrangements.

13.      Affiliate marketing arrangements are contractual arrangements by which a content creator agrees to promote an online retailer or its products or services in exchange for commissions. In most cases, the creator refers followers to the retailer's website with a link to the site that identifies the content creator as the source of the consumer's referral. When the consumer purchases a product on the retailer's site using that link, a "tracking cookie" (a small text file that links the consumer's activity to the content creator) is placed on the consumer's browser, which allows the retailer to credit the sale to the content creator and pay the negotiated commission. The tracking cookie remains active for a set duration (*e.g.*, two weeks or a month), to ensure that the content creator is credited with the sale even if the consumer does not purchase from the retailer right away.

14.     Affiliate marketing is one of the key drivers of this marketplace, with an estimated $10 billion in commissions paid in 2024 with projections estimating over $15 billion in commissions being paid by 2028.

15.     PayPal exploits the mechanics of these affiliate marketing arrangements to steal content creators' commissions. PayPal purchased Honey Science Corporation in January 2020, and with it, acquired the Honey browser extension, which it renamed "PayPal Honey."

16.     PayPal Honey does far more than find discounts for its millions of users. The browser extension deploys a barrage of aggressive tactics—relentless pop-ups, intrusive notifications, and even forced tab openings—all designed to hijack and redirect commissions that rightfully belong to Plaintiff and the class members.[1] In so doing, PayPal turns Honey's users into unwitting participants in a large-scale scheme against content creators, who themselves have also been misled by Honey advertisements. Indeed, numerous content creators have promoted the browser extension as a great money-saving tool.

17.     PayPal Honey poaches content creators' commissions by replacing the tracking cookies that identify the referring content creators with a unique ID with PayPal's own identifiers. When a Honey user clicks on a content creator's affiliate link and arrives at a merchant's website, as mentioned above, a tracking cookie is placed on the consumer's browser linking the consumer to the content creator for the purpose of tracking the creator's commission. When the consumer then adds a product to his shopping cart, the Honey browser extension forces a pop-up on the consumer's screen asking the consumer to click on a particular link. When the consumer clicks the link, PayPal Honey places *another* tracking cookie on the consumer's browser. This tracking cookie overrides the content creator's tracking cookie and redirects the content creator's affiliate referral commission to PayPal.

18.     PayPal Honey steals affiliate commissions in at least three ways. Through PayPal Honey coupon and discount code searches; through its PayPal Honey rewards program; and through the "PayPal Checkout" option. Each is described below in turn.

**PayPal Honey Coupon Searches**

19.     Consumers can install the PayPal Honey extension on their preferred internet browser in seconds and use it to search for available coupons and discount codes when they purchase merchandise from any one of Honey's more than 30,000 participating online retailers. The discounts Honey retrieves originate with the retailer, not PayPal Honey or any third-party source.

20.     Once PayPal Honey has been installed, it searches for coupons and discount codes automatically when the consumer adds a product to her cart and is ready to make an online purchase. Then,

---

[1]   *See* MegaLag, *Exposing the Honey Influencer Scam*, YouTube (Dec. 21, 2024), https://www.youtube.com/watch?v=vc4yL3YTwWk (analyzing Honey and noting that PayPal confirmed that "[i]f Honey is activated and is the last program used while shopping on a site, it is likely Honey will receive credit for the purchase")

a Honey pop-up appears and asks the consumer if she would like to apply the coupons PayPal Honey has found:



21.    When the consumer authorizes the search by clicking on the link, PayPal Honey scans the available codes it retrieved, finds codes that apply to the consumer's purchase, and applies the code that provides the best discount. If no applicable codes are available, PayPal Honey informs the consumer that he has already secured the best available price.

22.    The popular YouTube channel "MegaLag" conducted and released the results of an investigation that showed the mechanics of PayPal's scheme. MegaLag clicked on an affiliate link provided by an influencer with 16 million followers known as "Linus Tech Tips" to purchase computer accessories from a merchant. Clicking on the link added a "tracking tag" labeled "Short Circuit" to the merchant's URL. "Short Circuit" is to one of Linus Tech Tips' YouTube channels.

23.    The tracking tag for Short Circuit was also saved on MegaLag's browser as a cookie containing the unique ID, "afc-howl-shortcircuit."



24.    MegaLag then used the Honey Browser Extension to search for discounts at checkout. After MegaLag checked for discounts, the Honey Browser Extension replaced Short Circuit's unique ID with PayPal's own unique ID, causing the Affiliate Commission to be paid to PayPal, instead of to Short Circuit.



25.    MegaLag's investigation confirmed that the PayPal Honey browser extension replaces an affiliate marketer's unique ID with PayPal's own unique ID even if the browser extension did not find any discounts for the consumer. In that scenario, the Honey Browser Extension creates a pop-up prompting the consumer to click, "Got it!" to close the pop-up. When a consumer clicks "Got it!", the Honey Browser Extension replaces the Affiliate Marketer unique ID with PayPal's own, thus diverting the Affiliate Commission for the sale to PayPal.

CLASS ACTION COMPLAINT



**PayPal Honey Rewards**

26.    PayPal Honey also has a rewards program that allows consumers to earn points on purchases made using Honey, regardless of whether applicable discount codes are available. According to Honey, it partners with participating retailers so that consumers can earn points when they make purchases. In reality, the rewards program further enables Honey to poach affiliate commissions. Honey then shares a tiny portion of the Affiliate Commission with the consumer in the form of points, which the consumer can redeem for cash and apply those points towards purchases with participating retailers.

27.    When a consumer uses an affiliate link to get to a participating retailer's online checkout page, the Honey Browser Extension creates a pop-up prompting them to "Activate Rewards" or "Activate Cash Back." When a consumer clicks the button, the Honey Browser Extension treats that like an affiliate referral and replaces the Affiliate Marketer's unique ID with PayPal's own, thus causing the Affiliate Commission to be paid to PayPal.

28.    MegaLag's investigation also demonstrated this scheme at work. MegaLag became an affiliate marketer with a Merchant called NordVPN. As part of that relationship, NordVPN agreed to award MegaLag a 40% commission of every sale made through MegaLag's affiliate link. MegaLag then

made two NordVPN purchases using his own affiliate link, one with the Honey Browser Extension and one without it.

29.     For his first purchase, using the Honey Browser Extension, MegaLag used his own affiliate link to access the NordVPN website. Behind the scenes, the unique ID contained in the "aff_id" and "nordvpn_aff_id" cookies was "60397." Upon information and belief, "60397" is the unique ID assigned to MegaLag.



30.     MegaLag then clicked the Honey Browser Extension pop-up marked "Activate Cash Back." When MegaLag interacted with the Honey browser extension, the browser extension replaced his unique ID with PayPal's and poached the Affiliate Commission. The browser window reloaded and the unique ID contained in the "aff_id" and "nordvpn_aff_id" cookies changed to "2495." Upon information and belief, "2495" is the unique ID assigned to PayPal.

CLASS ACTION COMPLAINT

31.    MegaLag received no affiliate commission for the first purchase.

32.    MegLag then made a second purchase *without* using the Honey browser extension. MegaLag used his own affiliate link to access the NordVPN website and complete his purchase. Following the purchase, NordVPN awarded MegaLag an affiliate commission of $35.60, representing 40% of the sale price.

**PayPal Honey Checkout**

33.    PayPal poaches affiliate commissions even when the Honey Browser Extension fails to find any discounts or points through the Rewards Program. In this scenario, the Honey Browser Extension creates a pop-up at checkout prompting the consumer to "Get Rewarded with PayPal" and offering a PayPal "Checkout" button. The Honey Browser Extension creates this pop-up even when the Merchant's own page already has an option to checkout with PayPal.



34.    When a consumer clicks "Checkout," the Honey Browser Extension replaces the Affiliate Marketer unique ID with PayPal's own, diverting the Affiliate Commission to PayPal.

**Plaintiff Brodie That Dood, Inc.**

35.    Plaintiff is an affiliate marketer that earns affiliate commissions when consumers click on its affiliate links and make a purchase from an online merchant with whom Plaintiff has an affiliate marketing relationship.

36.    Plaintiff has collected thousands of dollars in affiliate commissions since 2020.

37.    Plaintiff would have earned more in affiliate commissions but for PayPal's misconduct alleged herein. When a consumer clicks on Plaintiff's affiliate link and interacts with the Honey browser extension, PayPal overrides Plaintiff's unique ID and replaces it with its own, thereby guaranteeing itself last-click attribution and poaching Plaintiff's affiliate commission.

38.    PayPal has harmed and continues to harm Plaintiff by poaching its affiliate commissions. PayPal has deprived and continues to deprive Plaintiff of affiliate commissions to which Plaintiff is rightly entitled as the person who referred those consumers to the merchants with whom Plaintiff has affiliate marketing relationships.

39.    By deliberately poaching Plaintiff's affiliate commissions, PayPal reduces the income that Plaintiff should rightfully be making from its referrals. Plaintiff would have earned more income in the form of more affiliate commissions but for PayPal's scheme to poach affiliate commissions through the Honey browser extension.

40.    Plaintiff continues to devote time and energy to creating online content and generating sales via its affiliate links. As a result, Plaintiff faces future harm in the form of PayPal continuing to poach its affiliate commissions by exploiting last-click attribution through the Honey browser extension.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action on its own behalf and on behalf of all others similarly situated, pursuant to Rules 23(a) and (b)(2) or (b)(3) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.  Plaintiff seeks to certify the following proposed nationwide class and Florida subclass:

***Nationwide Class***:

All content creators in the United States who lost affiliate commissions from a United States online merchant to PayPal as a result of consumers' use of the Honey browser extension.

***Florida Subclass***:

All content creators in Florida who lost affiliate commissions from a United States online merchant to PayPal as a result of consumers' use of the Honey browser extension.

42.    Excluded from each class are Defendants and their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class

1   Counsel and their employees; and the judicial officers and their immediate family members and associated

2   court staff assigned to this case.

3       43.    Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed

4   classes following the discovery period and before the Court determines whether class certification is

5   appropriate.

6       44.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff

7   can prove the elements of its claims on a class-wide basis using the same evidence as would be used to

8   prove those elements in individual actions alleging the same claims.

9   **Numerosity**

10       45.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). There are at least

11   thousands of content creators nationwide and at least hundreds in Florida who have lost affiliate

12   commissions as a result of PayPal's wrongful conduct described in this Complaint. Individual joinder of

13   all class members is impracticable.

14       46.    The identity of class members is ascertainable, as the identities of all class members can

15   be identified in Defendants' books and records or the books and records of the online merchants who

16   contract with PayPal Honey and with whom class members entered into affiliate marketing relationships.

17   Plaintiff anticipates providing appropriate notice to each certified class in compliance with Fed. R. Civ. P.

18   23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order

19   under Fed. R. Civ. P. 23(d).

20   **Commonality**

21       47.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because there

22   are questions of law and fact that are common to each of the classes.  These common questions predominate

23   over any questions affecting only individual class members. The predominating common or class-wide

24   fact questions include, but are not limited to:

25         a.   Whether PayPal overrides content creators' tracking cookies with its own cookies;

26         b.   Whether PayPal knows that its tracking cookies divert content creators' commissions;

27         c.   Whether affiliate commissions were diverted from class members to PayPal;

28         d.   Whether PayPal's poaching of affiliate commissions interfered with class members'

1    contracts and relationships with online retailers;

2        e.    Whether PayPal has been unjustly enriched to the detriment of the class.

3    **Typicality**

4        48.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims

5    are typical of the claims of each of the class members, as all class members were and are similarly affected

6    and their claims arise from the same wrongful conduct. Each class member contracted with online retailers

7    to receive affiliate commissions and had those commissions poached by PayPal Honey. As a result, each

8    class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff. The

9    relief Plaintiff seeks in this action is typical of the relief sought for the absent class members.

10    **Adequacy of Representation**

11        49.    Plaintiff will fairly and adequately protect the interests of the class members. Plaintiff is

12    committed to the vigorous prosecution of this action and there is no hostility or conflict between or among

13    Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this

14    litigation as a class action.

15        50.    To prosecute this case, Plaintiff has chosen the undersigned law firms, which have

16    substantial experience in the prosecution of large and complex class action litigation and have the financial

17    resources to meet the costs associated with the vigorous prosecution of this type of litigation.  Plaintiff

18    and its counsel will fairly and adequately protect the interest of all class members.

19    **Predominance/Superiority**

20        51.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3).  A class action is superior

21    to other available methods for the fair and efficient adjudication of the rights of the class members. The

22    joinder of individual class members is impracticable because of the large number of class members whose

23    commissions were misappropriated by PayPal during the class period.

24        52.    Because the monetary damages suffered by and resources available to individual class

25    members may be relatively small, the expense and burden of individual litigation would make it difficult

26    or impossible for individual class members to redress the wrongs done to each of them individually, such

27    that most class members would have no rational economic interest in individually controlling the

28    prosecution of specific actions. The burden imposed on the judicial system by individual litigation, and

to PayPal, by even a small fraction of the class members, would be enormous.

53.    Compared to piecemeal litigation, class action litigation presents far fewer management difficulties, far better conserves the resources of both the judiciary and the parties, and far more effectively protects the rights of each class member. The benefits to the legitimate interests of the parties, the court, and the public resulting from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation. Class adjudication is simply superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

54.    Plaintiff is unaware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.  The Court may, on motion of Plaintiff or on its own determination, certify nationwide and statewide classes for claims sharing common legal questions; utilize the provisions of Fed. R. Civ. P. 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Fed. R. Civ. P. 23(c)(5) to divide any class into subclasses.

**Requirements of Fed. R. Civ. P. 23(b)(2)**

55.    Defendants have acted or failed to act in a manner generally applicable to the class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class.

## CLAIMS FOR RELIEF

### COUNT ONE
**Tortious Interference with Contractual Relations**
**(against all Defendants on behalf of the Nationwide Class)**

56.    Plaintiff re-alleges and incorporates herein by reference each of the allegations set forth in paragraphs 1-40.

57.    Plaintiff Brodie That Dood has had and continues to have affiliate marketing contracts with numerous online merchants, including Sundays Dog Food, Spot & Tango, and K9 Sport Sack.

58.    Pursuant to those contracts' terms, Plaintiff has agreed to promote, and does promote,

1  various merchants' businesses, products, and services in exchange for a commission on all sales closed

2  due to its referrals.

3      59.    Defendants know and have known about these contractual relationships. Specifically,

4  Defendants know that affiliate marketers like Plaintiff and the class members contract with online retailers

5  to promote their businesses, products, and services in exchange for commissions on all sales arising from

6  the affiliate marketers' referrals.

7      60.    Defendants interfered with and disrupted these contracts, and continue to do so, by

8  intentionally overriding and replacing Plaintiff's and the class members' tracking cookies, and the unique

9  IDs associated with those cookies, with their own, and poaching the affiliate commissions due and owing

10  to Plaintiff and the class members under their affiliate marketing contracts with online merchants.

11  Defendants' intentional conduct also artificially causes online merchants to undercount Plaintiff and class

12  members' referrals, creating the appearance that Plaintiff and class members are underperforming their

13  obligations under their affiliate marketing contracts.

14      61.    Defendants acted intentionally or knew that their actions would disrupt these pre-existing

15  contractual and business relationships.

16      62.    PayPal's conduct harmed and continues to harm Plaintiff and the class members.

17      63.    Plaintiff and the class members have suffered economic losses, including but not limited to

18  lost commissions, as a direct and proximate result of Defendants' tortious interference.

19      64.    Plaintiff and class members are entitled to recover damages and costs permitted by law, and

20  to injunctive relief to halt future interference by PayPal as a result of its ongoing conduct.

21                                   **COUNT TWO**
                          **Tortious Interference with Prospective Economic Advantage**
22                        **(against all Defendants on behalf of the Nationwide Class)**

23      65.    Plaintiff re-alleges and incorporates herein by reference each of the allegations set forth in

24  paragraphs 1-40.

25      66.    Plaintiff and the class members are engaged in ongoing and advantageous business

26  relationships with online merchants. Plaintiff and the class members collect commissions for all products

27  and services sold as a result of their referrals of their followers, subscribers, and other consumers to online

28

merchants' websites.

67.     Defendants know and have known about these economic relationships. Specifically, Defendants know that affiliate marketers like Plaintiff and the class members promote online retailers' businesses, products, and services in exchange for commissions on all sales arising from the affiliate marketers' referrals.

68.     Defendants interfered with and disrupted these relationships, and continue to do so, by intentionally overriding and replacing Plaintiff's and the class members' tracking cookies, and the unique IDs associated with those cookies, with their own, and poaching the affiliate commissions due and owing to Plaintiff and the class members. Defendants' intentional conduct also artificially causes online merchants to undercount Plaintiff and class members' referrals, creating the appearance that Plaintiff and class members are underperforming in their economic relationships with online merchants.

69.     Defendants acted intentionally or knew that their actions would disrupt Plaintiff's and the class members' economic relationships with online merchants.

70.     PayPal's conduct has harmed and continues to harm Plaintiff and the class members.

71.     Plaintiff and the class members have suffered economic losses, including but not limited to lost commissions, as a direct and proximate result of Defendants' tortious interference.

72.     Plaintiff and the class members are at risk of future harm in the form of lost affiliate commissions and future economic opportunities because PayPal continues to purposefully use the Honey browser extension to poach affiliate commissions and artificially depress Plaintiff and class members' referrals and affiliate commissions.

73.     Plaintiff and the class members are entitled to recover damages and costs permitted by law, and to injunctive relief to halt future interference by PayPal as a result of its ongoing conduct.

## COUNT THREE
### Conversion
### (against all Defendants on behalf of the Nationwide Class)

74.     Plaintiff re-alleges and incorporates herein by reference each of the allegations set forth in paragraphs 1-40.

75.     Plaintiff and the class members earned affiliate commissions on referrals to retailers'

websites that resulted in the sale of goods and services and had ownership of and a right to collect those commissions.

76.   PayPal wrongfully diverted those commissions to its own accounts by replacing Plaintiff's and the class members' tracking cookies and unique IDs with its own when consumers activated PayPal's Honey browser extension.

77.   PayPal did not earn and had no right to the commissions it collected using the Honey browser extension.  PayPal has assumed and exercised ownership of Plaintiff's and the class members' affiliate commissions without justification or authorization, and continues to do so.

78.   PayPal's wrongful exercise of control over Plaintiff and class members' personal property constitutes conversion.

79.   Neither Plaintiff nor the class members expressly or impliedly assented to or ratified PayPal's wrongful conversion.

80.   Plaintiff and class members are harmed and will continue to be harmed by PayPal's ongoing conduct as a direct and proximate result of PayPal's conversion of their affiliate commissions.

81.   Plaintiff and class members are entitled to recover damages and costs permitted by law, and to injunctive relief to halt future conversion by PayPal as a result of its ongoing conduct.

## COUNT FOUR
### Unjust Enrichment
### (against all Defendants on behalf of the Nationwide Class)

82.   Plaintiff re-alleges and incorporates herein by reference each of the allegations set forth in paragraphs 1-40.

83.   Plaintiff asserts this claim of unjust enrichment in the alternative to the legal causes of action, and/or in the event that Plaintiff and class members lack an adequate remedy at law.

84.   PayPal misappropriated commission payments belonging to Plaintiff and the class members by overriding affiliate marketers' tracking cookies and unique IDs with its own cookies when consumers used the PayPal Honey browser extension in connection with their online purchases.

85.   PayPal did nothing to earn the affiliate commissions or any commission at all. PayPal had no legitimate claim or interest in the misappropriated commissions.

86.     PayPal obtained and retained these commissions and benefits unjustly through its use of the Honey browser extension.

87.     PayPal's retention of these commissions and benefits is inequitable and unjust, and they continue the inequitable and unjust practices alleged herein.

88.     Plaintiff and the class members have not, and due to Defendants' concealment, could not consent to Defendants' enrichment of themselves at the expense of Plaintiff and class members.

89.     Plaintiff and the class members are entitled to restitution of all commissions and other benefits Defendants took as a result of their improper acts.

<u>COUNT FIVE</u>
**Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla Stat. § 501.201,** *et seq.* **("FDUTPA")**
**(against all Defendants on behalf of the Florida Subclass)**

90.     Plaintiff re-alleges and incorporates herein by reference each of the allegations set forth in paragraphs 1-40.

91.     FDUTPA's aims include "simplify[ing], clarify[ing], and moderniz[ing] the law governing . . . unfair methods of competition, and unconscionable, deceptive, and unfair trade practices." Fla. Stat. § 501.202.

92.     In keeping with this mandate, FDUTPA declares unlawful  "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

93.     PayPal surreptitiously overrides affiliate marketers' tracking cookies and unique IDs, including those belonging to Plaintiff and the Florida Subclass, and misappropriates commission payments earned by those marketers. In so doing, PayPal engages in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade and commerce.

94.     PayPal has wrongfully deprived, and continues to deprive, Plaintiff and the Florida Subclass of funds they earned as the true originators of sales arising from their affiliate marketing links. The gravity of harm resulting from PayPal's practice of unconscionably, falsely, and deceptively misappropriating commissions outweighs any potential utility to general commerce or trade.

95.     PayPal actually and proximately caused Plaintiff and the members of the Florida Subclass

economic harm by depriving them of commissions they earned from referrals through their affiliate links. PayPal also damaged Plaintiff's and the Florida Subclass's relationships with online retailers by depressing the number of referrals credited to Plaintiff and each Subclass member. The conduct alleged herein is continuing and there is no indication that PayPal will terminate the misconduct described herein in the future absent a Court order.

96.    Plaintiff and the Florida Subclass therefore seek actual damages, an injunction, and all other appropriate relief allowed under FDUTPA, including reasonable attorneys' fees and costs of suit.

**COUNT SIX**
**Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(against all Defendants on behalf of the Nationwide Class)**

97.    Plaintiff re-alleges and incorporates herein by reference each of the allegations set forth in paragraphs 1-40.

98.    PayPal's conduct described herein violates the "unfair" and "unlawful" prongs of California's Unfair Competition Law (the "UCL"), codified at California Business and Professions Code §§ 17200, *et seq.*

99.    By its conduct alleged herein, PayPal has violated the "unfair" prong of the UCL, including without limitation by poaching affiliate commissions from Plaintiff and the class members.

100.    PayPal's conduct alleged herein is immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiff and the class members. By its conduct alleged herein, PayPal has already stolen at least several millions of dollars belonging to the class. There is no utility to PayPal's conduct, and even if there were utility, it would be significantly outweighed by the gravity of the harm caused by PayPal's conduct alleged herein.

101.    PayPal's conduct alleged herein also violates California public policy, including as such policy is reflected in Cal. Civ. Code §§ 1709-1710 and California common law relating to fraud, unjust enrichment, interference with economic and contractual relationships, and conversion.

102.    By its conduct alleged herein, PayPal has also violated the "unlawful" prong of the UCL, including by violating California common law relating to fraud, unjust enrichment, interference with economic and contractual relationships, and conversion.

CLASS ACTION COMPLAINT

103.    By its conduct alleged herein, PayPal proximately caused harm to Plaintiff and the class members, including by stealing affiliate commissions that rightfully belong to Plaintiff and the class members.

104.    As a direct and proximate result of PayPal's unfair and unlawful conduct, Plaintiff and the class members lost money and property in which they have a vested interest.

105.    Plaintiff and the class lack an adequate remedy at law.

106.    Plaintiff seeks an order granting restitution to Plaintiff and the class in an amount to be proven at trial, including for the amounts of the affiliate commissions that PayPal has stolen from them by its conduct alleged herein.

107.    PayPal's conduct has caused substantial injury to Plaintiffs and the class. PayPal's conduct is ongoing and will continue absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining PayPal from continuing its misconduct alleged herein.

108.    Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks that this matter be certified as a class action, its attorneys be appointed Class Counsel, and it be appointed a Class Representative, and demands judgment against Defendants as follows:

A. Awarding Plaintiff and the proposed Class and Florida Subclass actual damages, statutory damages, restitution, disgorgement of profits, attorneys' fees and costs, and any other relief that may be permitted by law or equity pursuant to the asserted claims for relief;

B. Permanently enjoining PayPal from engaging in the misconduct alleged herein;

C. Awarding Plaintiff and the proposed Class and Florida Subclass pre-judgment and post-judgment interest pursuant to the claims for relief;

D. Awarding Plaintiff and the proposed Class and Florida Subclass costs, expenses, and attorneys' fees as permitted by law;

E. Awarding Plaintiffs and the proposed Class and Florida Subclass punitive, exemplary, and treble damages as permitted by law;

F.  Awarding Plaintiff and the proposed Class and Florida Subclass further relief as the Court may deem just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims so triable

Dated: February 12, 2025                              Respectfully submitted,

                                                                  /s/ *Adam E. Polk*
                                                                  Dena C. Sharp (SBN 245869)
                                                                  Adam E. Polk (SBN 273000)
                                                                  Simon S. Grille (SBN 294914)
                                                                  **GIRARD SHARP LLP**
                                                                  601 California Street, Suite 1400
                                                                  San Francisco, CA 94108
                                                                  Telephone: (415) 981-4800
                                                                  dsharp@girardsharp.com
                                                                  apolk@girardsharp.com
                                                                  sgrille@girardsharp.com

                                                                  Benjamin J. Widlanski (*pro hac vice forthcoming*)
                                                                  Tal J. Lifshitz (*pro hac vice forthcoming*)
                                                                  Rachel Sullivan (*pro hac vice forthcoming*)
                                                                  Michael Lorigas (*pro hac vice forthcoming*)
                                                                  **KOZYAK TROPIN & THROCKMORTON LLP**
                                                                  2525 Ponce de Leon Boulevard, 9th Floor
                                                                  Coral Gables, Florida 33134
                                                                  Telephone: (305) 372-1800
                                                                  bwidlanski@kttlaw.com
                                                                  tjl@kttlaw.com
                                                                  rs@kttlaw.com
                                                                  mlorigas@kttlaw.com

                                                                  Jeffrey A. Neiman (*pro hac vice forthcoming*)
                                                                  Michael A. Pineiro (*pro hac vice forthcoming*)
                                                                  Brandon S. Floch (*pro hac vice forthcoming*)
                                                                  **MARCUS NEIMAN RASHBAUM & PINEIRO LLP**
                                                                  2 South Biscayne Blvd., Suite 2530
                                                                  Miami, FL 33131
                                                                  Telephone: 305.400.4260
                                                                  Fax: 757.260.9857
                                                                  jneiman@mnrlawfirm.com
                                                                  mpineiro@mnrlawfirm.com
                                                                  bfloch@mnrlawfirm.com

                                                                  *Counsel for Plaintiff Brodie That Dood, Inc. and the Proposed Class*

CLASS ACTION COMPLAINT